UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL WAYNE KING,<br><br>    Plaintiff,<br><br>    vs.<br><br>JOHN D. CHOKATOS, et al.,<br><br>    Defendants. | 1:12-cv-01936-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BE GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND<br>(Doc. 16.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.    BACKGROUND**

Darrell Wayne King ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on November 29, 2012. (Doc. 1.) This action proceeds on the initial Complaint against defendants Dr. John D. Chokatos and LVN Michele Ivy Stringer ("Defendants") for deliberate indifference to Plaintiff's medical needs, in violation of the Eighth Amendment. This case also proceeds on Plaintiff's state law claims for medical

1

malpractice against defendant Chokatos and professional negligence against defendant Stringer.[1]

On February 18, 2014, Defendants filed an unenumerated Rule 12(b) motion to dismiss on the ground that Plaintiff failed to exhaust the available administrative remedies before filing suit, and a Rule 12(b)(6) motion to dismiss for failure to state a claim on the grounds that Plaintiff failed to comply with California's Government Claims Act[2] before filing suit, failure to state a claim for medical malpractice against defendant Chokatos, and failure to state a claim for professional negligence against defendant Stringer. (Doc. 16.) On April 21, 2014, Plaintiff filed an opposition to the motions. (Doc. 22.)

On April 23, 2014, in light of the Ninth Circuit's decision in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), Defendants filed a request to convert the unenumerated Rule 12(b) portion of their motion to dismiss into a motion for summary judgment under Rule 56. (Doc. 23.) On May 8, 2014, the court issued an order denying Defendants' request to convert, and also denying the unenumerated Rule 12(b) portion of their motion to dismiss on procedural grounds, without prejudice. (Doc. 25.)

On June 9, 2014, Defendants filed a reply to Plaintiff's opposition to the Rule 12(b)(6) motion to dismiss. (Doc. 26.)

Defendants' Rule 12(b)(6) motion to dismiss is now before the court.

///

---

[1] Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 726 (1966).

[2] Formerly known as the California Tort Claims Act. City of Stockton v. Superior Court, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Pleasant Valley State Prison (PVSP) in Coalinga, California. This case now proceeds under § 1983 and state tort law against defendants John Chokatos, M.D. and Michele Stringer, LVN, employees of the CDCR at PVSP, on Plaintiff's claims that he was denied adequate medical care in violation of the Eighth Amendment, and was subjected to medical malpractice and professional negligence.[3]  Plaintiff's factual allegations follow.

Plaintiff injured his back in 2008, suffering from "disc narrowing from the L3 through L15 vertebrae." (Complaint, Doc. 1 at 4 ¶9.) Over the course of the next three years, Plaintiff's back pain became progressively worse. Plaintiff was seen by several prison doctors, "each of whom prescribed opioid pain medication (Tramadol) to help manage the pain. This after non-steroidal antiinflammatory medicines (NSAID) became ineffective." (Id. at 4 ¶11.) Plaintiff's back pain eventually became so severe that he could only lie on his left side in a curled position in order to make the pain "somewhat bearable." (Id. at 4 ¶12.)

Plaintiff was seen by Dr. Chokatos on August 2, 2011. Dr. Chokatos reviewed x-rays from 2008 and July of 2011. Plaintiff alleges that despite his complaints of leg numbness and severe pain, he was not referred to an outside specialist. Plaintiff was again seen by Dr. Chokatos on August 2, 2011. Dr. Chokatos reviewed the x-ray reports and recommendations, but did not order an MRI or refer Plaintiff to an orthopedic or neurological specialist.

Plaintiff was seen on August 31, 2011, by Physician's Assistant (PA) J. Fortune in response to Plaintiff's complaints of severe pain and leg numbness. Fortune, after reviewing the same x-rays that Chokatos reviewed, ordered an MRI of Plaintiff's spine.

The MRI was performed on September 16, 2011, and revealed a L4-L5 disc herniation, causing moderate to severe spinal stenosis and compression of the left exiting nerve roots. Plaintiff was seen on September 23, 2011, by PA Randolph Wilson. Plaintiff's pain medication

---

[3] On August 19, 2013, the court found that Plaintiff's Complaint states cognizable claims for relief under § 1983 against defendants Chokatos and Stringer for inadequate medical care in violation of the Eighth Amendment. (Doc. 10.)

was renewed, and Plaintiff was issued a wheelchair and cane chrono for three months.  Plaintiff was also referred to a neurologist.

The next day, Plaintiff approached defendant LVN Stringer to receive his medication. Plaintiff alleges that the following events occurred:

> Stringer informed Plaintiff that his medication bag had not been refilled.  At that point, Plaintiff expressed frustration with Stringer due to her failure – for the fourth time -- to send timely refill orders to the pharmacy to that Plaintiff would not go without medication to manage his pain.
>
> After Plaintiff finished expressing his frustration, Defendant Stringer became visibly irritated, and said, "you don't have to take any meds."  She then left Plaintiff's housing unit.
>
> From 9-24-11 to 9-26-11, Plaintiff did not receive pain medication.  As a result, Plaintiff was in severe, debilitating pain.  Such that, Plaintiff was forced to lie on his left side in a curled position in order to reduce the pain.
>
> On September 28, 2011, Plaintiff was called to the clinic to see Defendant Chokatos.  Upon arriving at the clinic, Chokatos said, "the LVN assigned to your building said that she saw you run up and down the stairs.  I'm taking your wheelchair and your pain medication, because you don't need them."  Plaintiff explained that this was not true and invited Chokatos to call Plaintiff's housing unit officers to confirm that Plaintiff's condition had rendered him unable to ambulate without assistance.  However, Chokatos refused to do so, saying "the LVN has no reason to lie on you.  I know Stringer (referring to Defendant Stringer)."
>
> During Plaintiff's 9-28-11 visit to the clinic, Defendant Chokatos did not perform any physical examination.  Furthermore, Chokatos reviewed Plaintiff's medical records and was aware of the 9-16-11 MRI of Plaintiff's lower back, which showed that he suffered from spinal stenosis and disc herniation, and nerve compression.  Chokatos was also aware that PA Wilson had conducted a previous examination and determined that a wheelchair and pain medication was medically necessary.
>
> In a report written by Defendant Chokatos on September 28, 2011, he acknowledged that no man with Plaintiff's condition would be able to run up and down a flight of stairs.

(Complaint at 6-8 ¶¶22-27.)

Plaintiff alleges that on October 19, 2011, he appeared before the Clinical Case Management Review Committee (CCMRC) regarding his continued complaints of pain.  The CCMRC contacted Plaintiff's housing unit officers, who confirmed that Plaintiff did not run up

and down a flight of stairs, and that he could not ambulate without assistance from others. The CCMRC recommended that Plaintiff be seen by a neurosurgeon "as soon as possible," and that Plaintiff keep his wheelchair and remain on pain medication pending evaluation by the neurosurgeon. (Complaint at 8 ¶29.)

Plaintiff was seen by a neurosurgeon on October 28, 2011. Plaintiff was diagnosed with a left foot drop resulting from a ruptured L4-L5 disc with spinal stenosis. The neurosurgeon recommended that Plaintiff be sent to an outside hospital for urgent lower back surgery. Dr. Chokatos reviewed the recommendations the same day, yet did not refer Plaintiff for lower back surgery.

On October 31, 2011, Plaintiff was called to the medical clinic for a doctor's appointment. Plaintiff waited five and a half hours outside. Plaintiff alleges that on two occasions, several inmates complained to the clinic officer that Plaintiff's back pain was progressively worsening and that he was moaning in pain from sitting in one place for a long time. Each time the inmates complained, however, Chokatos said, "He can either wait for his appointment or refuse it." (Complaint at 9 ¶32.) Plaintiff specifically alleges that while he sat outdoors in pain, "Chokatos was observed standing at the clinic door watching Plaintiff while laughing with the other medical staff." (Id. at 9 ¶33.) Plaintiff alleges that the following then occurred:

> Around 1:30 p.m., the pain resulting from Plaintiff sitting in the wheelchair for over five (5) hours became so severe that he tried standing up to relieve the pain. As Plaintiff did so, however, his legs "gave out" and he fell to the ground. Other inmates got the attention of prison guards, who sounded the alarm for a medical emergency.
>
> Although prison guards responded to the scene of Plaintiff's fall, medical staff did not. The medical clinic, however, was no more than thirty (30) feet from where Plaintiff fell. Defendant Chokatos was observed standing in the window watching as Plaintiff lay on the ground screaming in pain.
>
> When prison guards arrived at the scene, they strapped Plaintiff to a gurney, causing him to scream in further agony. The guards then wheeled the gurney to Chokatos' office and left the clinic.
>
> While Plaintiff lay on the gurney in Defendant Chokatos' office, Plaintiff screamed in agony begging Chokatos to allow Plaintiff

> to lie on his side instead of flat on his back, which made the pain worse. However, Chokatos ignored Plaintiff's screams of pain for more than (10) minutes.
>
> After ten (10) minutes, Defendants called medical staff and ordered them to wheel Plaintiff's gurney into the clinic holding cage, saying "I'm tired of hearing this guy (referring to Plaintiff)."
>
> While Plaintiff was in the clinic holding cage, the pain became so severe that Plaintiff lost consciousness. He regained consciousness in the back of the prison ambulance en route to the PVSP Correctional Treatment Center (CTC). . .
>
> After Plaintiff arrived at the CTC, he was evaluated by PA Wilson. PA Wilson conducted a physical examination and reviewed Plaintiff's medical records, after which, Wilson ordered that Plaintiff be immediately transported to Bakersfield Memorial Hospital.
>
> That day, Plaintiff was admitted to Bakersfield Memorial Hospital where he received emergency surgery to remove the herniated L4-L5 disc and affected parts of vertebral bone. Plaintiff remained in the hospital for more than ten (10) days to recover from the operation.

(Complaint at 9-10 ¶¶34-41.)

## III.  RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted). Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its

face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. 556).

### A. Defendants' Motion

Defendants move to dismiss Plaintiff's state law claims on the grounds that (1) Plaintiff failed to comply with California's Government Claims Act, and (2) the cause of action asserted under California law for professional negligence does not state facts sufficient to constitute a cause of action against defendant Stringer.

#### 1. California's Government Claims Act

*Legal Standard*

California's Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2 (West 2011). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1240, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209, 64 Cal.Rptr.3d 210, 164 P.3d 630 (2007). Compliance with the Government Claims Act is an element of the cause of action, Bodde, 32 Cal.4th at 1240, 13 Cal.Rptr.3d 534, 90 P.3d 116, is required, Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir.1995), and "failure to file a claim is fatal to a cause of action," Hacienda La Puente Unified School Dist. Of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir.1992); City of Stockton, 42 Cal.4th at 738.

///

A plaintiff 'must allege facts demonstrating or excusing compliance with the claim presentation requirement.'" Bodde, 32 Cal.4th at 1243. California courts "employ a test of substantial compliance rather than strict compliance in evaluating whether a plaintiff has met the demands of the claims statutes." Life v. County of Los Angeles, 227 Cal.App.3d 894, 899, 278 Cal.Rptr. 196 (1991).

### *Defendants' Position*

Defendants assert that Plaintiff's Complaint contains no statements or any exhibits indicating that Plaintiff either presented a claim to the Victim Compensation and Government Claims Board (VCGCB) or had such a claim rejected. Defendants argue that the absence of alleged facts in a complaint which demonstrate compliance with or excuse from the Government Claims Act constitutes grounds for dismissal of a plaintiff's state claims, and on that basis, the court should dismiss all of Plaintiff's state claims against defendants Chokatos and Stringer.

Defendants further argue that even assuming Plaintiff had complied with the presentation requirement and alleged facts in the Complaint demonstrating compliance with or excuse from the Government Claims Act, his state claim for medical malpractice is barred because it is not fairly reflected in his government claim.[4] Defendants assert that Plaintiff's government claim fails to reflect the following material allegations reflected in the Complaint:

(1) Any alleged incident involving King's treatment by, or interaction with, Defendant Chokatos or other health care professionals prior to September 24, 2011 (Complaint, Doc. 1 at 5:2-6:23.);

(2) Allegations that Defendant Chokatos was aware that King suffered severe back pain and numbness in his left leg and foot (Complaint at 12:11-12.);

///

---

[4] Defendants assert that Plaintiff submitted one Government Tort Claim including the allegations referred to in the Complaint on September 24, 2011, September 28, 2011, and October 31, 2011. (Declaration of E. Rivera, Doc. 16-2 ¶¶3-4, Exh. A.) This claim, received by the VCGCB on February 15, 2012, was formally rejected on April 19, 2012. (Id. ¶¶3-4. Exhs. B-C.)

(3)   Allegations that Defendant Chokatos was aware of the 3-11-08 and 7-28-11 x-ray reports which recommended he rule out disc herniation (Complaint at 12:12-14.);

(4)   Allegations that Defendant Chokatos had a duty to order an MRI to rule out or confirm disc herniation and refer King to a neurological or orthopedic specialist, yet failed to do so (Complaint at 12:14-16.);

(5)   Allegations that Defendant Chokatos was aware of the 9-16-11 MRI report which revealed that King suffered L4-L5 disc herniation causing spinal nerve compression (Complaint at 12:17-19.);

(6)   Allegations that Defendant Chokatos was aware of King's constant complaints of pain and numbness in his left leg and foot (Complaint at 12:19-20.); and

(7)   Allegations that Defendant Chokatos had acknowledged in writing that no man in King's condition could run up and down a flight of stairs (Complaint at 12:25-27.).

Defendants argue that all of the elements of a medical malpractice claim – legal duty, breach of duty, proximate causation, and resulting damage -- are not alleged in Plaintiff's government claim.  Defendants further argue that the government claim does not allege any duty, or breach of any duty, on the part of defendant Chokatos, or address Plaintiff's allegations in the Complaint of events occurring before September 28, 2011.  Defendants request dismissal of Plaintiff's claim for malpractice against defendant Chokatos, because the factual basis of Plaintiff's second cause of action of the Complaint is not fairly reflected in his government claim.

### *Plaintiff's Position*

With respect to his failure to comply with the claims-presentation requirement of the Government Claims Act, Plaintiff argues that he can easily cure the defect by adding a paragraph alleging compliance.  Plaintiff contends that while the Complaint must be dismissed, the dismissal must be without prejudice and with leave to amend.

///

With respect to his allegations of medical malpractice in the Complaint against defendant Chokatos, Plaintiff argues that the allegations are fairly reflected in his government claim. Plaintiff asserts that of the seven allegations that Defendants assert are not reflected in his government claim, one is not at issue, five are implied, and the last merely gives greater specificity to an existing allegation. Plaintiff argues that the Government Claims Act is satisfied when the Complaint elaborates or adds further factual details to allegations made in a government claim. Plaintiff asserts that his second cause of action against defendant Chokatos makes no claim of interactions prior to September 24, 2011. Plaintiff contends that his claim that he was examined by Dr. Chokatos implies that Chokatos was aware, or should have been aware, of the facts in Plaintiff's medical file relevant to his treatment. Plaintiff also contends that the specific allegation that defendant Chokatos had a duty to order an MRI or refer Plaintiff to a specialist is merely a more detailed version of the underlying claim that defendant Chokatos had a duty to properly diagnose and treat Plaintiff. Plaintiff asserts that because it is reasonably clear that Plaintiff was alleging that his treatment, or non-treatment, by defendant Chokatos led to his injury, more specific allegations of what proper treatment would have entailed – an MRI or specialist referral – do not fundamentally alter the claim.

Plaintiff also argues that even if his government claim was defective as Defendants assert, it still complies with the Government Claims Act because it gave sufficient information for prison officials to investigate the claims and learn of the further details that Defendants claim were not alleged in the government claim.

### ***Defendants' Reply***

Defendants reply that Plaintiff's opposition concedes that his failure to plead compliance with the Government Claims Act subjects all of his state law claims to dismissal without prejudice. Defendants request that the court dismiss Plaintiff's claims without prejudice, stating that "[u]pon Plaintiff filing an amended complaint, Defendants shall re-raise the issue of exhaustion via motion for summary judgment and/or assert other additional defenses if appropriate." (Reply, Doc. 26 at 2 fn.1.)

///

*__Discussion__*

In Defendants' reply of July 9, 2014, Defendants request the court to dismiss Plaintiff's state law claims for failure to plead compliance with the Government Claims Act, with leave to amend the complaint. Based on this request, together with Defendants' statement of their intent to re-raise exhaustion and/or assert other defenses after Plaintiff has amended the complaint, the court finds that Defendants have withdrawn their motion to dismiss on the grounds that (1) Plaintiff's Government Tort Claim fails to fairly reflect his state claim for medical malpractice, and (2) Plaintiff's Complaint fails to state a cause of action for professional negligence against defendant Stringer. Therefore, Defendants' motion to dismiss on these grounds should be denied as moot, without prejudice.

Defendants' motion is not styled as a motion for summary judgment, and the court declines to convert the motion into a motion for summary judgment. Therefore, the court will apply the standards applicable to Rule 12(b)(6) motions to dismiss, set forth above, and will not consider the purported evidence submitted by the parties. However, the court may consider the allegations contained in Plaintiff's opposition in deciding whether to grant leave to amend. See Broam v. Broqan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Plaintiff has acknowledged that his Complaint does not allege that he complied with the claims presentation requirements of the Government Claims Act with respect to his claims against Defendants, and the court finds that the Complaint fails to allege facts demonstrating or excusing compliance with the claim presentation requirements of the Government Claims Act. Because noncompliance with the Government Claims Act is fatal to Plaintiff's state law claims, the state claims against Defendants must be dismissed for failure to state a claim. However, because it appears from Plaintiff's opposition that Plaintiff may be able to allege facts showing compliance with the claims presentation of the Government Claims Act, the court should grant leave to amend.

2. **Professional Negligence Claim – defendant Stringer**

As discussed above, the court finds that Defendants have withdrawn their motion to dismiss on the ground that Plaintiff's Complaint fails to state a cause of action for professional

negligence against defendant Stringer. Therefore, Defendants' motion to dismiss on this ground should be denied as moot, without prejudice to renewal of the motion at a later stage of the proceedings.

### IV.     PLAINTIFF'S § 1983 CLAIMS

A plaintiff does not need to comply with the claim requirements of the Government Claims Act before bringing a federal claim under the Civil Rights Act. <u>Williams v. Horvath</u>, 16 Cal.3d 834, 129 Cal.Rptr. 453, 548 P.2d 1125, 1130 (1976) (holding that § 911.2 is inapplicable to § 1983 claims and that "the purposes underlying § 1983 . . . may not be frustrated by state substantive limitations couched in procedural language"); <u>California Corr. Peace Officers Ass'n v. Virga</u>, 181 Cal.App.4th 30, 38, 103 Cal.Rptr.3d 699, 706 (2010) (holding the Government Claims Act inapplicable to 1983 claims and noting the "decades of case law holding that section 1983 claims are not subject to the Claims Act"); <u>Gatto v. Cnty. of Sonoma</u>, 98 Cal.App.4th 744, 120 Cal.Rptr.2d 550, 565 (2002) ("Section 1983 claims are exempt from the state claims requirements because the supremacy clause of the United States Constitution does not permit a state law to alter or restrict federally created rights").

To the extent that Defendants move to dismiss Plaintiff's claims based solely on his failure to comply with the Government Claims Act, the requirements of the Act are inapplicable to claims brought under § 1983 or other federally created rights. Therefore, the court finds that Plaintiff's § 1983 claims survive the motion to dismiss.

### V.      CONCLUSION AND RECOMMENDATION

The court finds that Plaintiff's Complaint fails to allege facts demonstrating or excusing his compliance with the claim presentation requirements of the Government Claims Act. Therefore, Defendants' motion to dismiss Plaintiff's state claims against them should be granted, with leave to amend.

The court also finds that Defendants have withdrawn their motion to dismiss on other grounds, and therefore the remaining portion of the motion to dismiss should be denied as moot, without prejudice.

///

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss, filed on February 18, 2014, be GRANTED in part and DENIED in part;

2. Defendants' motion to dismiss Plaintiff's state claims for failure to plead compliance with California's Government Claims Act be GRANTED, with leave to amend;

3. Defendants' motion to dismiss Plaintiff's state claim for medical malpractice on the ground that Plaintiff's government claim fails to fairly reflect this claim be DENIED, without prejudice;

4. Defendants' motion to dismiss Plaintiff's claim for professional negligence against defendant Stringer for failure to state a cause of action be DENIED, without prejudice; and

5. Plaintiff's § 1983 claims survive Defendants' motion to dismiss.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 9, 2014**             **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE