UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| DARRELL WAYNE KING,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>JOHN D. CHOKATOS, et al.,<br><br>　　　Defendants. | 1:12-cv-01936-LJO-GSA-PC<br><br>ORDER FINDING COGNIZABLE CLAIMS<br><br>ORDER FOR THIS CASE TO PROCEED AGAINST DEFENDANTS CHOKATOS AND STRINGER ON PLAINTIFF'S EIGHTH AMENDMENT MEDICAL CLAIMS AND SUPPLEMENTAL STATE LAW CLAIMS<br><br>THIRTY DAY DEADLINE FOR DEFENDANTS TO FILE ANSWER TO FIRST AMENDED COMPLAINT<br>(ECF No. 33.) |
|---|---|

**I.　　BACKGROUND**

Plaintiff filed the Complaint commencing this action on November 29, 2012. (ECF No. 1.) The court screened the Complaint pursuant to 28 U.S.C. 1915A and issued an order on August 19, 2013, finding that Plaintiff stated cognizable claims under § 1983 against defendants Dr. John D. Chokatos and LVN Michelle Ivy Stringer ("Defendants") for inadequate medical care in violation of the Eighth Amendment. (ECF No. 10.) The court directed the U.S. Marshal to serve process upon Defendants. (Id.)

On February 18, 2014, Defendants filed a motion to dismiss the Complaint for failure to exhaust remedies, failure to comply with the California Government Torts Act, and failure to state a claim for professional negligence against defendant Stringer. (ECF No. 16.) On August

25, 2014, the court issued an order granting in part and denying in part Defendants' motion to dismiss. (ECF No. 32.) Plaintiff was ordered to either file an amended complaint or notify the court of his willingness to proceed only with the claims found cognizable by the court. (ECF No. 32.) On September 2, 2014, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (ECF No. 33.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Pleasant Valley State Prison (PVSP) in Coalinga, California, where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants Dr. John D. Chokatos and LVN Michele Ivy Stringer ("Defendants"). Defendants were employed by the CDCR at PVSP at the time of the events at issue. Plaintiff's factual allegations follow.

Plaintiff injured his spine in early 2008. An x-ray revealed lumbar muscle spasms, narrowing of the L3-L5 vertebrae, and possible disc herniation or degeneration. During the next three years, Plaintiff's spinal condition worsened. During this period, Plaintiff was seen by various physicians, who all prescribed opioid pain medication after it was determined that NSAID analgesics were ineffective. Plaintiff's back pain eventually became so severe that he could not walk unassisted and could only ameliorate his pain slightly if he lay on his left side in a fetal position.

In early 2011, Plaintiff suffered from numbness of his left side from the waist down. On July 25, 2011, Plaintiff collapsed to the ground when his legs lost function due to severe back pain which left him unable to walk. Plaintiff was transported to the Medical Clinic via stretcher. This incident was documented in Plaintiff's chart. Two days later, Plaintiff submitted a CDCR Form 7362, Health Care Services Request Form ("Request"), complaining of extreme pain and numbness in his left side from hip to toes and severe muscle spasms.

On July 28, 2011, Plaintiff visited defendant Dr. Chokatos at the Medical Clinic. Plaintiff told Chokatos that his spinal pain was severe, that his left leg and foot would become numb if he moved suddenly, and that he needed a wheelchair. Chokatos told Plaintiff, "I don't think you need a wheelchair or Tramadol. I don't think you're in the pain you say you're in." (First Amended Complaint (FAC), ECF No. 33 ¶23.) Chokatos did not order Plaintiff a wheelchair or pain medication, contrary to accepted medical practice. Chokatos ordered an x-ray of Plaintiff's lumbar spine, which was taken that day. Dr. Tony Deeths [not a defendant]

compared this x-ray to the March 11, 2008 x-ray and wrote in Plaintiff's chart that he found disc narrowing of the L1-L5 vertebrae, and spondylosis.

Three days later, on July 31, 2011, Plaintiff submitted a Request complaining of "severe hip pain." (FAC ¶27.) On August 2, 2011, Plaintiff was seen again by Chokatos. Chokatos observed that Plaintiff was using a cane which he had to borrow from another inmate. In the Medical Progress Note for this examination, Chokatos falsely stated that as to Plaintiff's lower back pain, "There were no abnormal orthopedic or neurologic findings." (FAC ¶30.) Contrary to accepted medical practice, Chokatos did not order an MRI or refer Plaintiff to an orthopedic or neurological specialist.

On August 8, 2011, Plaintiff was examined by a nurse who noted in his chart that he complained that his back still hurt quite a bit. On August 12, 2011, Plaintiff submitted another Request, complaining of excruciating pain and partial functioning of his left side. On August 28, 2011, Plaintiff submitted a 6th Request, stating that he has a chronic condition, is not receiving adequate treatment, and cannot sleep well. Plaintiff reported that a bulge was noticeable and "[t]here is something growing internally." (FAC ¶35.) On August 31, 2011, Plaintiff was examined by Physician's Assistant (PA) J. Fortune [not a defendant] who reviewed Plaintiff's chart and x-rays, ordered an MRI of Plaintiff's lumbar spine, and issued chronos for a ground floor cell, bottom bunk, back brace, and cane.

On September 12, 2011, during physical therapy, Plaintiff's legs went numb and he was rushed to the Correctional Treatment Center (hospital). The nurse noted Plaintiff's complaints that he was unable to do anything, even exercise, could not deal with the pain around the clock, and needed to be sent out because he thinks something is wrong inside. Plaintiff reported that when he urinates, he has a sharp pain coming from his back to his left bladder area. The nurse noted a severe right lateral trunk shift, that Plaintiff walks slowly with a cane, and that his back is not in alignment with low body when he ambulates. Plaintiff was also seen by PA Randolph Wilson [not a defendant] who ordered that he be examined at the Clinic the next day.

Plaintiff received a priority ducat to visit Chokatos on September 14, 2011, but Chokatos refused to see him on September 14th and again on the 15th. Plaintiff talked to his

psychiatrist about the problem, who called Chokatos, and Chokatos told her he would see Plaintiff that day, but he did not.  Plaintiff submitted another Request and complained about his inadequate medical treatment.

On September 16, 2011, Dr. Ranjiv Saini [not a defendant] conducted an MRI examination of Plaintiff's lumbosacral spine, as ordered by Fortune.  Saini documented that the MRI showed "degenerative changes" including a left disc extrusion causing "moderate to severe spinal stenosis in the left lateral recess and impingement of the left exiting nerve roots." (FAC ¶48.)

A week later, Plaintiff was examined by PA Wilson, who reviewed the MRI results and Plaintiff's chart, renewed Plaintiff's prescription for pain medication, issued a chrono for Plaintiff to use a wheelchair and cane for three months, referred Plaintiff to a neurologist, and ordered that at work Plaintiff must "avoid prolonged standing, walking, [and] lifting [over 15 pounds]."  (FAC ¶50.)

On September 24, 2011, Plaintiff approached defendant LVN Stringer for a dose of pain medication, and she told him his prescription had not been refilled.  Plaintiff expressed frustration because this was the fourth time Stringer failed to renew the prescription.  Stringer grew irritated and said, "You don't have to take any meds," and left the housing unit.  (FAC ¶54.)  From September 24-26, Plaintiff did not receive pain medication, resulting in severe, debilitating pain.

On September 28, 2011, Plaintiff was called to the Clinic by Chokatos who told Plaintiff that Stringer said she saw him run up and down the stairs.  Chokatos said he was taking away the wheelchair and pain medication "because you don't need them."  (FAC ¶57.) Plaintiff believes Stringer falsely told Chokatos that he had run up and down the stairs. Plaintiff told Chokatos that this was not true and asked Chokatos to call the correctional officers in Plaintiff's housing unit to confirm it was false.  Chokatos refused and said that "the LVN has no reason to lie on you.  I know Stringer." (FAC ¶60.)  Chokatos wrote in his notes that nobody with Plaintiff's condition would be able to run up and down a flight of stairs, and ordered Plaintiff's pain medication be discontinued, wheelchair and cane be confiscated, and

Plaintiff's assignment to the bottom bunk and a ground floor cell be revoked.  Chokatos also changed Plaintiff's job assignment limitations from "avoid prolonged standing, walking, and lifting" to "cannot continuously squat, crouch, crawl."  (FAC ¶63.)  Plaintiff believes there are no job positions where an inmate must continuously squat, crouch, or crawl.

On October 13, 2011, Plaintiff submitted another Request complaining, in part, "ongoing numbness in my leg and foot ... I am in constant pain which is becoming unbearable.  I need to see a doctor ASAP."  (FAC ¶65.)  That day, Chokatos removed Plaintiff from the Disability Placement Program, falsely writing that there was "no evidence of a significant mobility impairment."  (FAC ¶66.)

On October 17, 2011, Plaintiff was examined by E. Conway, RN [not a defendant] who documented his complaints of a loss of bladder control and that his medication was not controlling his pain.

On October 19, 2011, Plaintiff was seen by the Clinical Case Management Review Committee (CCMRC) about his ongoing complaints.  The CCMRC contacted Plaintiff's housing unit officers, who denied seeing him run up and down stairs and corroborated the fact that he has been moving slower, holding onto things, and not moving as much over the last three months.  The CCMRC found that Plaintiff's complaints of pain and observable symptoms were consistent with all objective evidence, and recommended that he see a neurosurgeon as soon as possible, remain in a wheelchair, remain with a lower bunk and ground floor assignment, and continue taking the Tramadol that Chokatos had discontinued.  The next day, Chokatos ignored the CCMRC's orders and discontinued Plaintiff's wheelchair, cane, back brace, and bottom bunk and ground floor assignment.

On October 23, 2011, Plaintiff submitted a Request complaining of an overwhelming hot burning sensation going down his glute muscle, the back of his leg, and all the way to his left foot, which was wearing him down mentally and emotionally.

On October 28, 2011, Plaintiff was evaluated by neurosurgeon Dr. Majid Rahimifar [not a defendant], who reviewed Plaintiff's records and examined him.  He noted that Plaintiff was in severe distress, walked with a pelvic tilt to the right, and had classic symptoms

corresponding to the MRI finding.  He diagnosed Plaintiff with spinal stenosis and a left foot drop resulting from a ruptured L4-L5 disc.  He recommended that Plaintiff receive lower back surgery as soon as possible.  Chokatos received Rahimifar's report and ignored the recommendation for surgery.

On October 31, 2011, Plaintiff was called to an 8:00am appointment at the Clinic by Chokatos, who made Plaintiff sit outdoors in his wheelchair for over five hours.  During this time, other inmates who were called to the Clinic after Plaintiff were seen by Chokatos.  Plaintiff asserts that the average wait time for a doctor appointment at the Clinic is less than an hour.  Twice during this period, other inmates complained to Clinic Officer Alcala that Plaintiff was suffering severe back pain, which was worsening, and was moaning in pain.  Each time an inmate complained, Chokatos said, "He can either wait for his appointment or refuse it."  (FAC ¶83.)  While Plaintiff sat outside in pain, officers, inmates, and medical staff observed Chokatos standing at the Clinic door watching Plaintiff and laughing.

Around 1:30 pm, Plaintiff's pain became so severe that he tried to stand up to relieve it, but his legs gave out and he collapsed to the ground.  Other inmates got the attention of officers who sounded the alarm for medical emergency.  Officers, inmates, and medical staff observed Chokatos standing at the Clinic window watching as Plaintiff lay on the ground screaming in pain. Medical staff did not respond to the alarm, despite the Clinic being less than 30 feet from where Plaintiff fell.  Plaintiff believes that Chokatos ordered Clinic staff not to respond.

Officers strapped Plaintiff to a stretcher, placed it on a gurney, wheeled Plaintiff into Chokatos' office, and left the Clinic. Plaintiff screamed in agony and begged Chokatos to allow him to lie on his side instead of flat on his back, which made the pain worse, but Chokatos ignored Plaintiff's pleas for over 10 minutes, causing Plaintiff to lose consciousness.  Chokatos ordered medical staff to wheel Plaintiff's gurney into the Clinic holding cage, saying, "I'm tired of hearing this guy."  (FAC ¶93.)

Plaintiff awoke in the holding tank, strapped to the gurney on his back, and begged for help for about an hour.  Plaintiff's pain became so severe that he lost consciousness, emptying
///

his bladder and bowels. Plaintiff regained consciousness in the back of an ambulance on the way to the hospital.

Upon arrival at the hospital, Plaintiff was evaluated by PA Wilson who noted that Plaintiff was crying and visibly distressed, was unable to walk, had decreased sensation to his lower extremity, and had a hot fiery stabbing pain that shot through his groin and down his leg. PA Wilson ordered that Plaintiff be given Tramadol and morphine for pain and then be immediately transported to the E.R. at Bakersfield Memorial Hospital for emergency spinal surgery. Plaintiff was admitted to the hospital and received emergency surgery to remove the herniated L4-L5 disc. Plaintiff remained hospitalized for over 10 days to recover.

Plaintiff requests declaratory relief, monetary damages, costs of suit, and attorney's fees.

### IV. PLAINTIFF'S MEDICAL CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the

meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.     Deliberate Indifference – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at

///

1060 (citing <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" <u>Id</u>. at 1057 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. <u>Id.</u> at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." <u>Id.</u> (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

**Discussion**

Plaintiff has demonstrated that he had serious medical needs, due to a medical condition that caused him extreme pain and other physical symptoms. Further, the court finds that Plaintiff states cognizable Eighth Amendment medical claims against defendants Chokatos and Stringer, for deliberate indifference to his serious medical needs.

**B.     Medical Malpractice -- State Law Claim**

Plaintiff brings claims against defendants Chokatos and Stringer for medical malpractice, which is a state tort. Plaintiff is informed that violation of state tort law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be

a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," with specific exceptions. "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.'" Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir.1991)). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In this instance, the Court has found cognizable § 1983 claims in the First Amended Complaint against defendants Chokatos and Stringer. Therefore, at this juncture, the Court shall exercise supplemental jurisdiction over Plaintiff's state tort law claims that form part of the same case or controversy as Plaintiff's cognizable federal claims.[1]

## V. CONCLUSION

The Court finds that Plaintiff's First Amended Complaint states cognizable claims against defendants Chokatos and Stringer for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Accordingly, Plaintiff shall be allowed to proceed with the First Amended Complaint filed on September 2, 2014, on the claims found cognizable by the Court and supplemental state law claims.

---

[1] At this stage of the proceedings, the Court makes no determination about the viability of Plaintiff's state tort claims.

Accordingly, based on the foregoing, IT IS HEREBY ORDERED that:

1. This action now proceeds with the First Amended Complaint, on Plaintiff's Eighth Amendment claims against defendants Dr. John D. Chokatos and LVN Michele I. Stringer, for failure to provide adequate medical care in violation of the Eighth Amendment, and for supplemental state law claims; and

2. Within thirty days from the date of service of this order, Defendants shall file an Answer to the First Amended Complaint.

IT IS SO ORDERED.

Dated:   **October 1, 2015**            **/s/ Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE