UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL WAYNE KING,<br><br>              Plaintiff,<br><br>     vs.<br><br>J. D. CHOKATOS, et al.,<br><br>              Defendants. | 1:12-cv-01936-LJO-EPG-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST CLAIMS BE GRANTED<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.      BACKGROUND**

Darrell Wayne King ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on November 29, 2012.  (ECF No. 1.)  This action now proceeds with the First Amended Complaint filed on September 2, 2014, alleging that Defendants J. Chokatos and M. Stringer were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment and also liable for medical malpractice under California state law.  (ECF No. 33.)

On January 28, 2016, Chokatos and Stringer filed a motion for summary judgment under Rule 56 on the grounds that the undisputed facts establish that Plaintiff failed to exhaust his available administrative remedies with respect to (1) all claims asserted against Stringer,

and (2) any claims against Chokatos for conduct that occurred prior to October 31, 2011. (ECF No. 46.) On March 21, 2016, Plaintiff filed an opposition to the motion. (ECF No. 50.) Defendant Stringer filed a reply on May 12, 2016 (ECF No. 60), and Defendant Chokatos filed a reply on May 16, 2016 (ECF No. 62). Defendants' motion for summary judgment is now before the Court.

## II.     PLAINTIFF'S ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), presently incarcerated at Pleasant Valley State Prison ("PVSP"), where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff's factual allegations follow.

In 2008, Plaintiff injured his spine and his injury worsened over the next three years. Plaintiff was prescribed pain medication. On July 25, 2011, Plaintiff collapsed when his legs lost function due to severe back pain. Plaintiff was placed on a stretcher and transported to the prison's medical clinic. On July 28, 2011, Plaintiff was examined by Dr. Chokatos. Plaintiff reported severe spinal pain, numbness of his left leg and foot, and professed a need for a wheelchair. Dr. Chokatos failed to provide Plaintiff with a wheelchair or pain medication. Dr. Chokatos ordered an X-ray of Plaintiff's lumbar spine. This X-ray revealed disc narrowing of the L1-L5 vertebrae and spondylosis.

Plaintiff was again seen by Dr. Chokatos on August 2, 2011. Dr. Chokatos failed to order an MRI of Plaintiff's spine and falsely stated in his notes that there were no abnormal orthopedic or neurological findings. On August 31, 2011, Plaintiff was examined by J. Fortune, PA-C. Mr. Fortune ordered an MRI of Plaintiff's lumbar spine and issued an order that authorized Plaintiff a lower tier and bunk assignment, and the use of a cane. Plaintiff's pain and symptoms worsened over the next few weeks. An MRI revealed several degenerative changes, including a left disc extrusion that caused moderate to severe spinal stenosis in the left lateral recess and impingement of the left exiting nerve roots.

On September 23, 2011, Randolph Wilson, PA-C, reviewed the MRI results and examined Plaintiff. Mr. Wilson provided Plaintiff with an order that authorized the use of a

1  cane and wheelchair for three months.  Mr. Wilson also renewed Plaintiff's prescription of pain
2  medication.  In addition, Mr. Wilson referred Plaintiff to a neurologist and ordered that at work
3  Plaintiff must avoid prolonged standing, walking, and lifting over fifteen pounds.
4       On September 24, 2011, Plaintiff approached Stringer to receive his daily pain
5  medication.  Stringer informed Plaintiff that his medication had not been refilled.  Plaintiff
6  became frustrated with Stringer, because this was the fourth time she failed to send a timely
7  refill order to the pharmacy.  Stringer then became irritated and said "you don't need to take
8  any meds."  From September 24, 2011, to September 26, 2011, Plaintiff did not receive pain
9  medication, leaving him in severe pain.
10      On September 28, 2011, Plaintiff was seen by Dr. Chokatos.  Dr. Chokatos informed
11 Plaintiff that "the LVN assigned to your building said that she saw you run up and down the
12 stairs.  I am taking your wheelchair and pain medication, because you don't need them."  Dr.
13 Chokatos declined Plaintiff's request to call Plaintiff's housing unit officers to confirm that
14 Plaintiff's condition had left him unable to ambulate without assistance.  However, Dr.
15 Chokatos wrote in his notes that "no one with Plaintiff's condition could run up and down a
16 flight of stairs."  Dr. Chokatos ordered that Plaintiff's pain medication be discontinued, his
17 wheelchair and cane be confiscated, and that his lower cell and bunk assignments be revoked.
18 Dr. Chokatos also changed King's job limitations from "avoid prolonged standing, walking,
19 and lifting" to "cannot continuously squat, crouch, crawl."  On October 13, 2011, Dr.
20 Chokatos wrongfully removed Plaintiff from the disability placement program by falsely
21 stating that there was "no evidence of a significant mobility impairment."
22      On October 19, 2011, Plaintiff appeared before the Clinical Case Management Review
23 Committee ("CCMRC") regarding his continued complaints of pain.  The CCMRC reviewed
24 the medical evidence and concluded that Plaintiff's complaints of pain and symptoms were
25 consistent with all objective medical evidence.  The CCMRC recommended that Plaintiff see a
26 neurosurgeon, remain in a wheelchair, and receive pain medication.  Dr. Chokatos ignored the
27 CCMRC's orders.
28

On October 28, 2011, a neurosurgeon, Majid Rahimifar, M.D., evaluated Plaintiff and reviewed the medical records. Dr. Rahimifar diagnosed Plaintiff with spinal stenosis and a left foot drop resulting from a ruptured L4-L5 disc. Dr. Rahimifar recommended Plaintiff receive lower back surgery. Dr. Chokatos received Dr. Rahimifar's medical report, but did not refer Plaintiff for lower back surgery.

On October 31, 2011, Plaintiff attended a medical appointment with Dr. Chokatos. Dr. Chokatos made Plaintiff sit and wait outside the medical clinic for over five hours. On two occasions, other inmates complained that Plaintiff's back pain was progressively worsening. Each time an inmate complained, Dr. Chokatos stated "[Plaintiff] can either wait for his appointment or refuse it." Dr. Chokatos was observed standing at the clinic door watching Plaintiff while laughing with the other medical staff. Plaintiff's back pain became so severe that when he stood his legs gave out and he collapsed. The medical staff did not respond and Dr. Chokatos was observed watching Plaintiff through a window. Officers sounded the alarm for a medical emergency and strapped Plaintiff to a stretcher. Plaintiff was taken into Dr. Chokatos's office. Plaintiff begged Dr. Chokatos to allow him to lie on his side instead of his back, which made the pain worse. Plaintiff's pleas were ignored and he lost consciousness. Dr. Chokatos ordered medical staff to wheel Plaintiff's gurney into the clinic holding cage. Plaintiff lost consciousness again because of the pain. He regained consciousness in the back of an ambulance in route to the hospital. At the hospital, Plaintiff was evaluated by Mr. Wilson, PA-C. Mr. Wilson ordered that Plaintiff be transferred to Bakersfield Memorial Hospital ("BMH"). At BMH, Plaintiff received emergency surgery to remove a herniated disc.

### III. MOTION FOR SUMMARY JUDGMENT BASED ON EXHAUSTION

#### A. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock,

549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

The test for deciding whether a grievance procedure was unavailable uses an objective standard. Albino v. Baca (Albino I), 697 F.3d 1023, 1035 (9th Cir. 2012). "[A]ffirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." Id. at 1034. An inmate may demonstrate the unavailability of remedies by showing "(1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies or (2) that the remedies were unknowable." Id. at 1033. The inmate must make "a good-faith effort" to determine and comply with a prison's grievance procedures. Id. at 1035.

Because "there can be no absence of exhaustion unless *some* relief remains available, a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." Brown, 422 F.3d at 936-37.

\\\

\\\

### B. California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal.Code Regs. tit. 15 § 3084.1(a). The process is initiated by submitting a CDCR Form 602 ("602 form"). Id. at § 3084.2(a).

At the time of the events giving rise to the Complaint in this action, California prisoners were required to submit appeals within thirty calendar days of the event being appealed, and the process was initiated by submission of the appeal at the first level. Id. at §§ 3084.7(a), 3084.8(c). Three levels of appeal were involved, including the first level, second level, and third level. Id. at § 3084.7. The third level of review exhausts administrative remedies. Id. at § 3084.7(d)(3). In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85; McKinney, 311 F.3d. at 1199-1201.

### C. Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). Albino v. Baca (Albino II), 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc). Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[1] or (2) a motion for summary judgment under Rule 56. Id. If the Court concludes that

---

[1] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino II, 747 F.3d at 1162.

Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.") A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary

7

judgment should be denied, and the district judge rather than a jury should determine the facts."
Id. at 1166.

### IV.     DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (DUF)[2]

1. During the time period relevant to the operative complaint, Plaintiff Darrell Wayne King (J-96720) was a prisoner within the custody of the California Department of Corrections and Rehabilitation ("CDCR") and was incarcerated at Pleasant Valley State Prison ("PVSP").  (ECF No. 33 at 2:7-9.)[3]

2. An inmate appeal or administrative remedy process was available for Plaintiff's use at PVSP.  (ECF No. 33 at 2:19-20.)[4]

3. Between July 28, 2011, and November 29, 2012, Plaintiff submitted six appeals that were received by the PVSP appeals office.  (Morgan Declaration, ¶ 4; Navarro Declaration, ¶ 3.)[5]

4. Appeal number PVSP-HC-11046975 was received by the PVSP Appeals Office on September 27, 2011.  (Navarro Declaration, ¶ 4.)[6]

5. Appeal number PVSP-HC-11046975 was rejected on September 28, 2011, because the appeal cited no material adverse effect and presented multiple appeal issues.  (Navarro Declaration, ¶ 4, Exhibit A.)[7]

---

[2] Defendant submits these facts for purposes of this motion only.  (ECF No. 46-2 at 1:20.)
[3] (DUF 1.)  Plaintiff does not dispute this fact.  (ECF No. 50 at 1:28.)
[4] (DUF 2.)  Plaintiff disputes this fact.  (Id. at 2:5-16.)  Specifically, Plaintiff claims that the appeals coordinator failed to timely respond or respond at all to several of Plaintiff's inmate appeals.  However, Plaintiff was able to successfully pursue several claims.  For example, Plaintiff complained of "systemic failures to process [a] grievance as mandated" because he was not given a log number for a 602 form in a request for interview form.  Plaintiff's request was granted, but the appeal was denied.  (Morgan Declaration, ECF No. 46-3 at 35-51).  This demonstrates that an administrative remedy process was available for Plaintiff.
[5] (DUF 3.)  Plaintiff disputes this fact.  (ECF No. 50 at 2:22-24.)  Plaintiff states he filed an additional 602 form on October 29, 2011.  (King Declaration, ECF No. 50 at 24.)  This fact is more properly stated as follows: between July 28, 2011, and November 29, 2012, Plaintiff submitted seven appeals that were received by the PVSP appeals office.
[6] (DUF 4.)  Plaintiff does not dispute this fact. (ECF No. 50 at 3:2.)
[7] (DUF 5.)  Plaintiff disputes this fact.  (Id. at 3:9-11.)  However a review of the evidence reveals that appeal number PVSP-HC-11046975 was rejected because the appeal cited no material adverse effect and presented multiple appeal issues.  (Navarro Declaration, ECF No. 46-4 at 5.)

6. Plaintiff did not submit appeal number PVSP-HC-11046975 to the second or third level of review. (Navarro Declaration, ¶ 5.)[8]

7. Appeal number PVSP-SC-11000300 was received by the PVSP Appeals Office on December 13, 2011. (Navarro Declaration, ¶ 5.)[9]

8. Second level review of appeal number PVSP-SC-11000300 was completed on Febuary 9, 2012, and this appeal was partially granted in that a confidential inquiry had been conducted which found that PVSP staff had not violated CDCR policy. (Navarro Declaration, ¶ 5.)[10]

9. Appeal number PVSP-SC-11000300 was submitted to the Office of Appeals for third level review and was denied on July 10, 2012. (Robinson Declaration, ¶ 7.)[11]

10. The CDCR Form 602 Inmate Appeal/Grievance Form submitted by Plaintiff for appeal number PVSP-SC-11000300 addresses an incident concerning Defendant Chokatos which occurred on October 31, 2011, and does not reference any prior acts, mistreatment or deliberate indifference on the part of Defendant Chokatos. (Navarro Declaration, Exhibit B.)[12]

11. The CDCR Form 602 Inmate Appeal/Grievance Form submitted by Plaintiff for appeal number PVSP-SC-11000300 does not identify or name Defendant Stringer, nor does it contain any reference to events occurring between September 24, 2011, and September 28, 2011. (Navarro Declaration, Exhibit B.)[13]

---

[8] (DUF 6.) Plaintiff does not dispute this fact. (ECF No. 50 at 3:17.)
[9] (DUF 7.) Plaintiff does not dispute this fact. (Id. at 3:22.)
[10] (DUF 8.) Plaintiff does not dispute this fact. (Id. at 4:2.)
[11] (DUF 9.) Plaintiff does not dispute this fact. (Id. at 4:8.)
[12] (DUF 10.) Plaintiff disputes this fact. (Id. at 4-5.) Plaintiff claims that the appeal alleged misconduct by Chokatos that occurred prior to October 31, 2011. Plaintiff claims that supporting documents, an interview in support of the appeal, and appeals associated with the second and third level reference misconduct by Chokatos that occurred prior to October 31, 2011. This fact is more properly stated as follows: the initial CDCR Form 602 submitted by Plaintiff for appeal number PVSP-SC-11000300 does not reference any other acts, mistreatment or deliberate indifference on the part of Defendant Chokatos prior to October 31, 2011.
[13] (DUF 11.) Plaintiff disputes this fact. (Id. at 5-6.) Plaintiff claims that 602 form's associated with the third level of appeal and an interview alleged misconduct by Defendant Stringer. This fact is more properly stated as

12. On December 23, 2011, Plaintiff submitted an appeal to the PVSP Appeals Office that was screened out and cancelled on December 28, 2011, prior [to] the assignment of a log number because it was not submitted within required time constraints. (Morgan Declaration, ¶ 5, Exhibit B.)[14]

13. Appeal number PVSP-A-12-000084 was received by the PVSP Appeals Office on January 23, 2012. (Morgan Declaration, ¶ 6.)[15]

14. Second level review of appeal number PVSP-A-12-000084 was completed on March 6, 2012, and this appeal was partially granted in that the cancelled appeal submitted by Plaintiff on December 23, 2011, would be accepted for review if resubmitted by Plaintiff. (Morgan Declaration, ¶ 6.)[16]

15. Plaintiff did not submit appeal number PVSP-A-12-000084 for third level review. (Voong Declaration, ¶ 8.)[17]

16. Appeal number PVSP-A-12-00123 was received by the PVSP Appeals Office on January 31, 2012. (Morgan Declaration, ¶ 7.)[18]

17. Second level review of appeal number PVSP-A-12-00123 was completed on March 20, 2012, and this appeal was partially granted in that a confidential inquiry had been conducted which found that PVSP staff had not violated CDCR policy. (Morgan Declaration, ¶ 7, Exhibit D.)[19]

18. Plaintiff did not submit PVSP-A-12-00123 for third level review. (Voong Declaration, ¶ 8.)[20]

---

follows: the initial CDCR 602 Form submitted by Plaintiff for appeal number PVSP-SC-11000300 does not identify or name Defendant Stringer, nor does it contain any reference to events occurring between September 24, 2011, and September 28, 2011.

[14] (DUF 12.) Plaintiff disputes this fact. (Id. at 6:14-19.) However, Plaintiff has not provided supporting evidence. Therefore, Plaintiff has not created a genuine dispute of this fact.
[15] (DUF 13.) Plaintiff does not dispute this fact. (Id. at 6:24.)
[16] (DUF 14.) Plaintiff does not dispute this fact. (Id. at 7:4.)
[17] (DUF 15.) Plaintiff does not dispute this fact. (Id. at 7:9.)
[18] (DUF 16.) Plaintiff does not dispute this fact. (Id. at 7:14.)
[19] (DUF 17.) Plaintiff does not dispute this fact. (Id. at 7:22.)
[20] (DUF 18.) Plaintiff does not dispute this fact. (Id. at 7:27.)

19. Appeal number PVSP-A-12-00610 was received by the PVSP Appeals Office on March 19, 2012. (Morgan Declaration, ¶ 8.)[21]

20. Appeal number PVSP-A-12-00610 was cancelled prior to review because Plaintiff withdrew this appeal on April 30, 2012. (Morgan Declaration, ¶ 8.)[22]

21. Plaintiff did not submit appeal number PVSP-A-12-00610 for second or third level review. (Morgan Declaration, ¶ 8; Voong Declaration, ¶ 8.)[23]

## V.  DEFENDANTS' MOTION

Defendants argue that Plaintiff failed to exhaust his administrative remedies for (1) all claims asserted against Stringer; and (2) any claims against Chokatos that occurred prior to October 31, 2011.

Defendants provide evidence that between July 28, 2011 and November 29, 2012, Plaintiff submitted six appeals that were received by the PVSP Appeals Office. (DUF 3; Morgan Declaration, ¶ 4; Navarro Declaration, ¶ 3.) Only appeal number PVSP-SC-11000300 was fully exhausted. (ECF No. 46-1 at 9:3-4.)

Defendants claim that PVSP-SC-11000300 does not address or place at issue any of the alleged conduct of Stringer or any of Chokatos' conduct that occurred prior to October 31, 2011. In addition, Defendants argue that Plaintiff failed to properly exhaust this appeal because PVSP-SC-11000300 was submitted more than thirty days after such conduct occurred.

## VII.  PLAINTIFF'S OPPOSITION

Plaintiff claims that PVSP-SC-11000300 addressed the allegations regarding Stringer. In order to support his assertion, Plaintiff points to his third level appeal and supplemental documents that were submitted with the grievance. This includes an interview Plaintiff had with prison officials regarding the appeal, and a medical report indicating that an LVN reported that Plaintiff does not require pain medication or a wheel chair. In addition, Plaintiff asserts he filed an additional 602 form on October, 29, 2011. This grievance alleged that Stringer made

---

[21] (DUF 19.) Plaintiff does not dispute this fact. (Id. at 8:4.)
[22] (DUF 20.) Plaintiff does not dispute this fact. (Id. at 8:10.)
[23] (DUF 21.) Plaintiff does not dispute this fact. (Id. at 8:16.)

false statements and refused to provide Plaintiff his prescribed medication.  Plaintiff states that this appeal was improperly rejected by prison officials and as a result his administrative remedies were effectively unavailable.  Plaintiff also argues that the 602 forms filed for the second and third level for appeal number PVSP-SC-11000300, and supporting documents attached to the 602 forms should have alerted prison officials to Chokatos' alleged conduct that occurred prior to October 31, 2011.

## VIII.   DISCUSSION

Based on an examination of Defendant's Undisputed Facts and the evidence in the record, the Court finds that Defendants have meet their burden and Plaintiff did not exhaust the appeals process for all claims against Stringer and any claims against Chokatos that occurred prior to October 31, 2011.

### A.   Appeal Number PVSP-SC-11000300

It is uncontested that appeal number PVSP-SC-11000300 obtained a decision at all three levels.  The Ninth Circuit Court of Appeals has held that a prisoner has exhausted his or her administrative remedies "if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process."  Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016).  This is because "when prison officials address the merits of a prisoner's grievance instead of enforcing a procedural bar, the state's interests in administrative exhaustion has been served." Id. at 657.

In this case, prison officials addressed the merits of appeal number PVSP-SC-11000300 and did not enforce any procedural bar.  Therefore, the Defendants' argument that summary judgment should be granted because PVSP-SC-11003000 was untimely fails.

Defendants also argue that appeal number PVSP-SC-11000300 does not address any of Stringer's conduct and any of Chokatos' conduct that occurred prior to October 31, 2011.  Under the PLRA, a grievance " 'suffices [to exhaust a claim] if it alerts the prison to the nature of the wrong for which redress is sought.' " Reyes, 810 F.3d at 659 (quoting Sapp, 623 F.3d at 824).  The grievance is simply required to alert prison staff to a problem and is not required to include legal theories.  Id.

It is undisputed that in Plaintiff's initial 602 form for appeal number PVSP-SC-11000300, Plaintiff failed to name Stringer or address any of Stringer's conduct. (ECF No. 46-6 at 11-12.) While an inmate is not required to "identify responsible parties or otherwise to signal who ultimately be sued" (Sapp, 623 F.3d at 824), the grievance must alert the prison to the nature of the wrong for which redress is sought. Reyes, 810 F.3d at 659. In his initial 602 form, Plaintiff did not reference any events prior to October 31, 2011. (ECF No. 46-6 at 11-12). Instead, Plaintiff solely referred to an event that occurred at a medical clinic on October 31, 2011.

In opposition, Plaintiff argues that his claim against Stringer was exhausted because during an interview during the appeal process, he mentioned Stringer's conduct. In addition, Plaintiff identified Stringer at the third level in the appeal process. However, this is not sufficient to exhaust his administrative remedies with regard to Stringer. See Randolph v. Nix, No. 1:12-CV-00392-LJO, 2015 WL 5432622, at *6 (E.D. Cal. Sept. 15, 2015) ("Plaintiff's identification of [Defendant] at a stage in the appeal process after the filing of the initial CDCR 602 form is not sufficient to exhaust his administrative remedies."). A prisoner does not exhaust administrative remedies when he or she includes new issues or persons from one level of review to another. Cal. Code Regs. tit. 15, § 3084.1(b); see also Sapp, 623 F.3d at 825 ("[A]n inmate must first present a complaint at the first level of the administrative process."); Dawkins v. Butler, No. 09CV1053 JLS DHB, 2013 WL 2475870, at *8 (S.D. Cal. June 7, 2013) ("Inmates must file separate appeals for each grievance and may not change the appeal issue from one level of review to another."). Moreover, the ability to waive a procedural default ripens only if "prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes, 810 F.3d at 658; see also Bulkin v. Ochoa, No. 113CV00388DADDLBPC, 2016 WL 1267265, at *2 (E.D. Cal. Apr. 1, 2016).

Similarly, the Court finds that Plaintiff did not exhaust his remedies concerning any of Chokatos' conduct which occurred prior to October 31, 2011. Plaintiff argues that in his third level appeal he referenced misconduct by Chokatos that occurred prior to October 31, 2011.

However, as discussed above, a prisoner does not exhaust administrative remedies when he includes new issues from one level of review to another.  Plaintiff also states that documents attached to his grievance concerned misconduct that occurred prior to October 31, 2011.  The Court disagrees that attaching documents referencing other incidents can exhaust issues regarding those incidents.  The supporting documents attached to the initial appeal did not sufficiently alert prison officials to a grievance regarding Chokatos' conduct that occurred prior to October 31, 2011 given that they were not referenced in the grievance itself.  See Sapp, 623 F.3d at 824.  Moreover, the prison did not address those issues in the appeals process and thus did not waive any timeliness argument with regard to those other issues.

### B.  CDCR 602 Form Filed on October 29, 2011

Plaintiff also argues that prison officials improperly rejected a grievance filed on October 29, 2011.  (Plaintiff's Opposition, ECF No. 50, 34:8-10).  Plaintiff asserts the grievance was rejected by prison staff and returned without a response.  (Plaintiff's Declaration, ECF No. 50, 10:7-8).  In the grievance, Plaintiff alleged that Stringer failed to deliver Plaintiff's medication and made false statements to Chokatos.  (Plaintiff's Declaration, Exhibit 6, ECF No. 50, 24).  As a result of the prison staff's error, Plaintiff argues that he was not required to fully exhaust this appeal.

Exhaustion is not required under the PLRA when improper screening of an inmate's grievances renders administrative remedies unavailable.  Sapp, 623 F.3d at 823.  As discussed above, an inmate may demonstrate the unavailability of remedies by showing "(1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies or (2) that the remedies were unknowable."  Albino I, 697 F.3d at 1033.

It appears on the face of this appeal that it was untimely.  The grievance mentions making a complaint to Stringer on September 24, 2011 and then learning that Stringer had supplied false information to Chokatos on September 28, 2011.  The appeal is dated October 29, 2011, which is more than 30 days after the underlying events.  The CDCR was thus within their discretion to reject the appeal.

Moreover, Plaintiff has not presented any evidence demonstrating that he attempted to challenge the rejection of this grievance.  "If Plaintiff had taken steps to challenge the rejection of [this grievance], but [the PVSP] Appeals Coordinator refused to review his appeal, such evidence might suggest that Plaintiff's failure to exhaust should be excused."  Beard v. Pennington, No. 14-CV-03128-YGR (PR), 2015 WL 7293652, at *9 (N.D. Cal. Nov. 19, 2015).  Moreover, there is evidence demonstrating that Plaintiff has successfully filed an appeal at through the Director's level of review indicating that the appeals process was generally available.

**VI.   CONCLUSION AND RECOMMENDATIONS**

Defendant has met his burden of demonstrating that under the undisputed facts, Plaintiff failed to exhaust his remedies for all his claims against Stringer and any claims against Chokatos that for conduct that occurred prior to October 31, 2011.  Therefore, **IT IS HEREBY RECOMMENDED** that Defendants' motion for summary judgment, filed on January 28, 2016, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 20, 2016**                              /s/ Erica P. Grosjean
                                                        UNITED STATES MAGISTRATE JUDGE